UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| RAYMOND TARVERDYAN,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary, Department of Homeland Security, et al.,<br><br>Respondents. | Case No. 5:26-cv-04257-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.**

**PROCEEDINGS**

On July 29, 2026, petitioner Raymond Tarverdyan ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1), along with the supporting Declaration of Megan Brewer ("Brewer Decl."), and seven attached exhibits. (Docket No. 1-1).

/ / /

/ / /

/ / /

On August 6, 2026, (pursuant to General Order No. 26-05's expedited briefing schedule, see Docket No. 6), Respondents filed a Response to the Petition ("Response") (Docket No. 9), accompanied by attached exhibits (Docket Nos. 9-1 through 9-4).

On August 7, 2026, Petitioner filed his Traverse ("Traverse"). (Docket No. 10).

On August 10, 2026, Petitioner filed an Ex Parte Application for Temporary Restraining Order ("TRO Application"). (Docket No. 11).

On August 12, 2026, Respondents filed an Opposition to the TRO Application. (Docket No. 13).

On August 13, 2026, Petitioner filed a Reply in support of his TRO Application. (Docket No. 14).

Thus, this matter is now ready for decision. For the reasons set forth herein, the Court grants the Petition and denies the TRO Application as moot.

## II.

## BACKGROUND[1]

Petitioner was born in the former U.S.S.R. (Petition, ¶ 18). Petitioner has resided in the United States since 1989. (Id., ¶ 19). On or about September 21, 2010, an Immigration Judge in El Paso, Texas granted petitioner lawful permanent residence status. (Declaration of Lourdes Palacios ["Palacios Decl."] at ¶ 5. However, Petitioner engaged in serious criminal activity and, as a result, on or about May 3, 2018, Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations agents interviewed Petitioner at the United States Penitentiary in Atwater, California. (Palacios Decl. at ¶ 6). Petitioner was detained by immigration authorities and, on October 30, 2019, an immigration judge ordered

[1] The Background is based primarily on the allegations in the Petition.

Petitioner removed. (Id., ¶ 20). Petitioner was released from immigration custody on an Order of Supervision ("OSUP") on January 1, 2020, because he could not be removed. (Id., ¶ 21, 22). Since his release on an OSUP, Petitioner has reported regularly to Immigration and Customs Enforcement ("ICE"), and he has not violated the terms of his OSUP or any criminal laws. (Brewer Decl., ¶ 5, Exh. 1, Declaration of Petitioner ["Petitioner Decl."], ¶ 6). On July 28, 2026, Petitioner was detained by immigration authorities and is now being held in Adelanto, California. (Petition, ¶ 3). At the time of his arrest and detention, Petitioner had not otherwise violated the terms of his release, and was not provided with any notice that he would be detained before his detention on July 28, 2026. (Id., ¶ 24). Respondents did not provide any other information or state that they have now been able to obtain a travel document to remove Petitioner to any country. (Id., ¶ 25). On August 4, 2026, ICE sent a request for travel document for Petitioner to the Armenian Consulate General in Glendale, California. (Palacios Decl., ¶ 14).

## III.

## PETITIONER'S CLAIMS

The Petition raises four claims for habeas relief: (1) Respondents failed to follow Department of Homeland Security ("DHS") regulations regarding the revocation of Petitioner's release, in violation of 8 C.F.R. §§ 241.13(i)(2), thereby violating Petitioner's right to due process; (2) Respondents failed to follow DHS regulations regarding the revocation of Petitioner's release, in violation of 8 C.F.R. § 241.4(l) and Petitioner's right to due process; (3) Petitioner's detention is in

/ / /

/ / /

/ / /

/ / /

/ / /

violation of 8 U.S.C. § 1231(a)(6), thereby violating Petitioner's right to due process; (4) Petitioner's removal to a third country is in violation of Petitioner's right to due process, the Immigration and Nationality Act, and the Convention Against Torture. (Petition at 5-10).[2]

## IV.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

To the extent Petitioner has raised claims under the Due Process Clause of the Fifth Amendment, the Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604

---

[2] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . .." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on

governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

**V.**

**DISCUSSION**

Petitioner argues that Respondents failed to comply with DHS regulations regarding the revocation of his OSUP in violation of his due process rights and immigration statutes and, therefore, he should be immediately released under the terms of his prior OSUP. (Petition at 4-7). In Opposition, Respondents contend that the revocation of Petitioner's OSUP and his subsequent detention proceedings comport with federal regulations, and they also contend that it is significantly likely that Petitioner will be removed in the reasonably foreseeable future. (Answer at 2). For the reasons set forth below, the Court finds that habeas relief is warranted with respect to Count I of the Petition.

1. Statutory Framework

"Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). This liberty interest is vested in "all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693; see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("The Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings.") (internal quotation marks and citation omitted).

Federal immigration law and its attendant regulations govern the procedures for removing noncitizens living unlawfully in the United States, including their detention during removal proceedings. Johnson v. Guzman Chavez, 594 U.S. 523, 527 (2021). Enforcement of these procedures has been delegated to the Executive Branch, LaDuke v. Nelson, 762 F.2d 1318, 1325 (9th Cir. 1985), *amended*, 796 F.2d

309 (9th Cir. 1986), and in effectuating its duties, "an agency must abide by its own regulations," Fort Stewart Schs. v. Fed. Lab. Rels. Auth., 495 U.S. 641, 654 (1990). Even where agency action is discretionary, an agency's "failure to exercise its own discretion, contrary to existing valid regulations," is a violation of law. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954). Thus, when a noncitizen is ordered removed and detained, immigration officials must act in a manner that comports with principles of due process and applicable federal statutes and regulations. See Burunsuzyan v. Noem, No. 5:26-cv-00049-RGK-AGR, 2026 WL 246067, at *3 (C.D. Cal. Jan. 27, 2026) ("[I]mmigration enforcement agencies' failing to comply with federal immigration law when removing or detaining a noncitizen ultimately violates the noncitizen's due process rights.") (citing cases). Failure to follow such regulations is unlawful, the remedy for which "may be injunctive relief, reversal of the agency action, or reversal and remand with an order requiring the agency to follow its own procedures." Clemente v. United States, 766 F.2d 1358, 1365 n.10 (9th Cir. 1985).

A noncitizen ordered removed must be removed "from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The government is required to detain the noncitizen for this initial 90-day period for the purpose of effectuating removal. Id. § 1231(a)(2)(A). If removal is not effectuated during this period, "the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." Id. § 1231(a)(3). Certain categories of removable noncitizens may be detained beyond the removal period, as delineated in section 1231(a)(6), so long as their detention comports with principles of due process. *See* Zadvydas, 533 U.S. at 689, 701 (holding that due process requires reading in an "implicit limitation" on the duration of detention under § 1231(a)(6) and adopting a "presumptively reasonable period of detention" of up to six months).

/ / /

Once a noncitizen is released pursuant to section 1231(a)(3), their release may be revoked in accordance with federal regulations. First, an individual subject to an order of supervision "who violates any of the conditions of release may be returned to custody and is subject to" certain penalties, including possible criminal prosecution. 8 C.F.R. § 241.13(i)(1); see also 8 C.F.R. § 241.4(l)(1). Second, for those who have not violated their conditions of release, the government may "revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Id. § 241.13(i)(2). Third, certain officials may exercise their discretion to revoke release where (i) the purposes of release have been served; (ii) the alien violated a condition of release; (iii) it is appropriate to enforce a removal order or to commence removal proceedings; or (iv) the conduct of the alien indicates that release would no longer be appropriate. Id. § 241.4(l)(2).

When revoking an order of supervision, ICE is required to notify the alien "of the reasons for revocation of his or her release" and to "conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." Id. § 241.13(i)(3); see also id. §§ 241.4(l)(1), (3). If the noncitizen is not released after the informal interview, their continued detention will be subject to a review process "within approximately three months after release is revoked," followed thereafter by periodic reviews as necessary. Id. § 241.4(l)(3).

2. Analysis

Petitioner argues that the revocation of his OSUP was procedurally improper because (1) Respondents failed to demonstrate changed circumstances existed before his re-detention, in violation of 8 C.F.R. §§ 241.13(i)(2); and (2) he was not served with a Notice of Revocation or provided an informal interview, in violation

of 8 C.F.R. §§ 241.13(h)(4)(i)(2). (Petition at 4-5). Respondents also submit exhibits, which purport to demonstrate that Petitioner was served with a Notice of Revocation of Release and that an informal interview was conducted. See (Notice of Revocation); (ECF No. 8-4 ("Alien Informal Interview")).

The Court notes the following undisputed facts: Petitioner was placed on an OSUP on January 1, 2020. (Answer at 3). Petitioner has complied with the terms of his OSUP without issue. (Petition at 3; Brewer Decl., ¶ 5; Petitioner Decl., ¶ 6). ICE detained Petitioner at a regularly scheduled check-in on July 28, 2026. (Palacios Decl., ¶ 10). Finally, ICE submitted a request for travel document for Petitioner to the Armenian Consulate General on August 4, 2026. (Id., ¶ 14). These undisputed facts reflect that ICE did not request travel documents for Petitioner until after he was detained. Respondents thus did not comply with the procedures for revocation of Petitioner's supervised release.

Under 8 C.F.R. § 241.13(i)(2), ICE may revoke Petitioner's OSUP only upon a finding of "changed circumstances," such that there is a "significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Courts do not make the initial determination of changed circumstances. Instead, "[t]o the extent ICE claims that it made such a determination, the court should review that claim in light of the regulations instructing ICE on how it should make such a determination." *Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023). When assessing if there is a significant likelihood of removal in the reasonably foreseeable future, immigration regulations instruct that ICE "shall consider all the facts of the case," including (1) "the history of the alien's efforts to comply with the order of removal," (2) "the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts," (3) "the reasonably foreseeable results of those efforts," and (4) "the views

of the Department of State regarding the prospects for removal of aliens to the country or countries in question." 8 C.F.R. § 241.13(f).

Here, as stated previously, Petitioner was detained on July 28, 2026. According to the Notice of Revocation, dated July 28, 2026, Petitioner's release was revoked pursuant to 8 C.F.R. § 241.13(i) on the grounds that "circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." (See Docket No. 9-3 at 1). However, as attested by Lourdes Palacios, Deportation Officer, Respondents did not send a request to the Consulate General of Armenia for a travel document for Petitioner until August 4, 2026. (Palacios Decl. ¶ 14). The fact that ICE did not attempt to contact the Armenian Consulate General until a week after Petitioner was detained demonstrates that a determination of changed circumstances did not exist at the time the Notice of Revocation was issued. Respondents otherwise fail to identify any facts demonstrating that there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future. Nor have Respondents set forth facts demonstrating that any of the other factors listed in § 241.13(f) support Petitioner's removal. Thus, absent a pre-detention determination of changed circumstances, Petitioner's detention is not authorized by immigration regulations. See V.K. v. Noem, No. 5:26-cv-00241-MWC-SK, 2026 WL 246023, at *4 (C.D. Cal. Jan. 25, 2026) (granting TRO where "[b]efore re-detaining [Petitioner], Respondents did not provide him with any written notice explaining the basis for the revocation of his release"); Uzzhina v. Chestnut, No. 1:25-cv-01594-DAD-SCR, 2025 WL 3458787, at *4 (E.D. Cal. Dec. 2, 2025) ("[S]imply applying for travel documents after detention is insufficient to show changed circumstances warranting the detaining of a petitioner."); Duong v. Charles, No. 1:25-cv-01375-SKO, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025) ("[T]he record does not show that a changed-circumstances determination was made *at or before* Petitioner's re-detention on July

1, 2025. Instead, the record shows that the Government did not even submit a request to Vietnam for travel documents until July 30, 2025—*almost a month after* re-detaining Petitioner.").

Even if ICE had sent the travel document request before issuing the Notice of Revocation, Respondents have not shown that the circumstances regarding Petitioner's ability to be removed to Armenia have changed. ICE previously ordered Petitioner removed to Armenian in 2019, yet he was subsequently released on his OSUP because Respondents were unable to remove Petitioner to Armenia, since Petitioner was born in the former U.S.S.R. and, therefore, is not a citizen of Armenia. (See Petition, ¶¶ 12, 18, 44; Brewer Decl., ¶ 5, Exh. 1, ¶ 5). Respondents do not describe why this present request for travel documentation warrants a finding of changed circumstances when Respondents have been unable to remove Petitioner for 6 years. In their Answer, Respondents contend that travel documents have been requested from "the country listed on his final removal order, which appears to be the country of his birth." (Answer at 4). That is a misstatement of fact. As noted, Petitioner was born in the former U.S.S.R., not in Armenia; the Republic of Armenia was established in 1991, following the dissolution of the Soviet Union, (See https://history.state.gov/countries.armenia). Thus, as Petitioner alleges, he is stateless. See Burunsuzyan, 2026 WL 246067, at *4 (finding that stating a "case is under review by Syria for the issuance of a travel document" did not appear to be changed circumstances that justified revocation of release, in violation of 8 C.F.R §§ 241.4(1)(3) and § 241.13(i)(3), "based on the record of Petitioner's regular check-ins in which immigration officers stated the same for decades"); see Bui v. Noem, No. 5:25-cv-03370-RGK-AJR, 2025 WL 4061564, at *3 (C.D. Cal. Dec. 30, 2025) ("[E]vidence that others have been removed, without a specific comparison to Petitioner's case, do little to show that Petitioner, himself, is likely to be removed in the reasonably foreseeable future.").

Where a noncitizen has complied with the conditions of release, ICE regulations do not authorize revocation of an OSUP absent a pre-detention determination of changed circumstances. See 8 C.F.R. §§ 241.13(i)(1), (2). Moreover, Zadvydas instructs that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." Zadvydas, 533 U.S. at 699–700. The record indicates that Petitioner was ordered removed to Armenia in 2019. (Palacios Decl., ¶ 7). However, instead, Petitioner was released on an OSUP. (Id., ¶ 8). Other than the assertion that "[a]s recent cases in our District demonstrate, Petitioner cannot establish that obtaining travel documents are not reasonably foreseeable to Armenia," and citing to two cases from this District, Respondents proffer no facts, documents, or policies indicating why removal is "reasonably foreseeable" to warrant Petitioner's continued detention. See Burunsuzyan, 2026 WL 246067, at *5 (granting TRO in part because the government did not rebut petitioner's evidence that his removal was not reasonably foreseeable). Given that the record before the Court does not demonstrate that a determination was made that changed circumstances justified revoking Petitioner's release, ICE's decision to re-detain Petitioner was arbitrary, in violation of 8 C.F.R. § 241.13(i)(2).

Accordingly, the Court finds that ICE violated Petitioner's due process rights. See Duong, 2025 WL 3187313, at *5 ("[T]he Government violated Petitioner's due process rights by not complying with its own rule under section 241.13(i)(3)."); Nazarian v. Noem, No. 25-cv-02694-KK-ADS, 2025 WL 3236209, at *4 (C.D. Cal. Nov. 3, 2025) ("Petitioner is likely to succeed on his claim that the revocation of his release and subsequent re-detention violate ICE's own regulations and, thereby, the Due Process Clause.").

/ / /

/ / /

## VI.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition.

1. Respondents are ORDERED to immediately release Petitioner Raymond Tarverdyan (A # 028-236-775) from ICE custody under the same Order of Supervision, restoring him to the same supervision conditions and restrictions that existed prior to his re-detention;

2. Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner absent any of the following: (a) Petitioner's violation of his conditions of release pursuant to 8 C.F.R. § 241.13(i)(1); (b) a showing of changed circumstances under 8 C.F.R § 241.13(i)(2) beyond the mere request for travel documents; (c) a determination by an authorized official that any of the conditions of 8 C.F.R. § 241.4(1)(2) are satisfied; or (d) other circumstances authorizing detention under applicable law; and

3. Respondents shall file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: August 17, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE